STATE OF NEBRASKA, APPELLEE, V. WALTER LEE BRADFORD,
APPELLANT.
395 N.W.2d 495

Filed October 24, 1986.   No. 85-881.

William L. Gilmore, for appellant.

Robert M. Spire, Attorney General, and Laura L. Freppel,
for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE,
SHANAHAN, and GRANT, JJ.

PER CURIAM.

The defendant, Walter Lee Bradford, appeals from the
denial of his motion to vacate his sentence pursuant to the

Nebraska Postconviction Act. Neb. Rev. Stat. §§ 29-3001 et seq. (Reissue 1985).

In 1983 the defendant was sentenced to life imprisonment upon a plea of guilty to first degree murder in the death of Gordon Robert Eno. Upon direct appeal we examined the record for error, determined that the appeal was frivolous, and affirmed the judgment pursuant to Neb. Ct. R. of Prac. 3B(4) (rev. 1986). 216 Neb. xxix (case No. 84-041, Mar. 21, 1984).

On April 9, 1985, the defendant filed a motion to vacate sentence, alleging that his constitutional rights had been violated on grounds that he was mentally retarded, had received ineffective assistance of counsel, and was not competent to enter a plea of guilty. The State subsequently filed a motion for an order denying the defendant an evidentiary hearing. On October 11, 1985, the trial court entered an order denying an evidentiary hearing and overruling the defendant's motion to vacate his sentence, finding that a review of the motion, files, and records in the case showed that the defendant was not entitled to relief. The defendant has appealed from that order and contends that (1) he should be granted an evidentiary hearing to determine whether his plea was made knowingly, intelligently, and voluntarily and (2) he was denied effective assistance of counsel because defense counsel failed to raise the issue of the defendant's mental competency.

An evidentiary hearing on a motion for postconviction relief is not required when the motion, files, and records of the case show that the defendant is not entitled to relief. § 29-3001; *State v. Apodaca, ante* p. 258, 388 N.W.2d 837 (1986). Moreover, an applicant proceeding under the Postconviction Act must allege facts amounting to " 'a violation or infringement of constitutional rights and the pleading of mere conclusions of fact or of law are [sic] not sufficient to require the court to grant an evidentiary hearing.' " *State v. Williams*, 218 Neb. 618, 620, 358 N.W.2d 195, 197 (1984) (quoting *State v. Turner*, 194 Neb. 252, 231 N.W.2d 345 (1975)).

The defendant's motion seems to assume that there was no evidence before the trial court as to the defendant's competency to plead and stand trial in the proceedings prior to the arraignment at which his plea of guilty was accepted. The

record is to the contrary.

In the present case the record shows that defense counsel filed a notice of intent to rely at trial upon the defenses of insanity, mental derangement, diminished capacity, and intoxication. In response, the State filed a motion seeking psychiatric examination of the defendant. The motion was sustained and the court entered an order that Drs. Robert Osborne and H.L. Balters, experts in psychiatry and psychology respectively, examine the defendant regarding his mental capacity at the time of the crime. See Neb. Rev. Stat. § 29-1823 (Reissue 1985).

In his August 26, 1983, report, Dr. Osborne indicated that the defendant was moderately mentally retarded. Dr. Osborne also found the defendant to have an alcohol abuse and dependence problem, mild organic brain syndrome, and a personality encompassing the schizotypal and antisocial personality classifications. Nevertheless, the defendant was, in Dr. Osborne's medical opinion, at the time of the crime, able (1) to understand what he was doing and the nature and quality of his acts, (2) to distinguish between right and wrong, (3) to know that his acts were wrong and deserved punishment, and (4) to form the "attempt" (sic) to do the said acts. Further, the doctor stated that the defendant was competent to stand trial and participate with his attorney in his own defense.

Dr. Balters reported that he found the defendant to possess a full-scale IQ of 52. Although he thought this score underestimated the defendant's true level of intelligence due to a lack of total cooperation in testing, he concluded that the defendant had a mentally retarded level of intellectual functioning. Dr. Balters also noted the defendant possessed some form of organic cerebral impairment and some schizophrenic processes, but not of the type which would grossly distort his involvement in reality. Finally, Dr. Balters stated that the defendant had sufficient mental capacity at the time of the crime (1) to understand what he was doing and the nature and quality of his acts, (2) to distinguish right from wrong with respect to the quality of his acts, (3) to recognize that such acts were wrong and deserved punishment, and (4) to form the intent to do such acts. Dr. Balters gave no opinion as to

the defendant's competency to stand trial.

Trial counsel subsequently moved for psychiatric examination of the defendant by Dr. David Kentsmith. This motion was sustained, but a report of Dr. Kentsmith's examination was never offered in evidence. This was the result of a conscious decision by trial counsel. Numerous other motions were filed by defense counsel prior to September 2, 1983, in preparation for the defendant's defense at trial.

On September 2, 1983, the defendant was rearraigned on the murder charge and entered a plea of guilty. The court questioned the defendant about the voluntariness of the withdrawal of his earlier not guilty plea, whether he understood the penalty for conviction of the crime, his education, work experience, and whether he had consumed any drugs or alcoholic liquor in the 24 hours preceding the arraignment that might interfere with his ability to understand the proceedings. The court then gave a lengthy advisement of the rights the defendant was waiving by entering his plea. The defendant expressed some confusion about the right against self-incrimination, the State's burden to prove guilt beyond a reasonable doubt, and the presumption of innocence. After consultation with defense counsel the defendant affirmatively answered that he understood these rights and that he was waiving them by entering his plea. The county attorney then submitted a written statement signed by the defendant as a factual basis for the plea. The defendant acknowledged he was entering his plea freely, voluntarily, and knowingly. The court accepted the plea after finding beyond a reasonable doubt that the defendant was acting voluntarily; understood the nature of the charge; fully understood his rights and freely, voluntarily, and knowingly waived them; and fully understood the consequences of his plea; and that the plea was made knowingly, voluntarily, and intelligently.

Shortly after this hearing, the defendant sent two letters to the trial court, both indicating that he wished to withdraw his guilty plea. A motion to withdraw the plea was subsequently filed by defense counsel on the defendant's behalf. At a September 26, 1983, hearing to determine the defendant's true desires in regard to withdrawing his plea, the defendant

indicated that he wanted to keep the plea. He was then granted leave to withdraw the motion to withdraw the guilty plea.

The defendant maintains his plea was not made knowingly, intelligently, or voluntarily because the record fails to show he was competent to plead guilty.

Competence to plead or stand trial requires that the defendant possess "the present capacity to understand the nature and object of the proceedings against him, to comprehend his own condition in reference to such proceedings, and to make a rational defense." *State v. Quarrels,* 211 Neb. 204, 207, 318 N.W.2d 76, 79 (1982). Mental retardation does not necessarily imply incompetence to plead or stand trial. See *State v. Quarrels, supra.* The issue of competency is one of fact to be determined by the trial court, and the means used to resolve it are discretionary with the court. *State v. Beans,* 212 Neb. 31, 321 N.W.2d 72 (1982). Moreover, the fact finder's determination on this issue will not be disturbed unless there is insufficient evidence to support the finding. *State v. Beans, supra.* Further, it is clear that the person seeking postconviction relief bears the burden of establishing the basis for such relief. *State v. Beans, supra.*

The defendant's confusion regarding technical legal concepts such as "self-incrimination" and "guilt beyond a reasonable doubt" is not surprising in light of his admitted reading deficiency. Beyond these questions, the defendant responded appropriately to the court's interrogation regarding his understanding of the consequences of the plea and the nature and object of the proceedings. Further, there is evidence in the form of Dr. Osborne's report that the defendant was competent to stand trial and to participate in his own defense. Trial counsel's conscious decision not to offer Dr. Kentsmith's report permits an inference that it would not have shown the defendant to be incompetent. In the motion to withdraw, filed in this court on February 3, 1984, counsel represented that it was the judgment of Dr. Kentsmith "that defendant was mentally competent to go to trial." The defendant did not allege otherwise in his motion. Certainly, the record is sufficient to show the defendant's competency. Thus, the trial court did not err in denying an evidentiary hearing, because the record shows

the defendant was not entitled to postconviction relief on this ground.

Next, the defendant maintains his trial counsel provided ineffective assistance in failing to raise the issue of his competency to enter a plea.

To establish ineffective assistance of counsel entitling a criminal defendant to postconviction relief, he must show trial counsel's failure to perform at least as well as a lawyer with ordinary skill and training in the criminal law or his failure to conscientiously protect his client's interests. *State v. Isikoff, ante* p. 679, 392 N.W.2d 783 (1986). The defendant also must show prejudice on the record as a result of counsel's actions or inactions. *State v. Isikoff, supra.*

The defendant has not alleged facts which would entitle him to a hearing on the issue of ineffective assistance of counsel.

In fact, the record indicates that defense counsel was vigorous in preparing to defend his client at trial. Among other things, counsel took approximately 50 depositions, reviewed numerous police reports, reviewed several possible defenses, researched the admissibility of certain statements by the defendant, filed numerous pretrial motions, and discussed the case at length with the defendant and his family. Defense counsel also presented evidence of mitigating circumstances at the defendant's sentencing hearing. Additionally, it is apparent, contrary to the defendant's assertion, that defense counsel sought to determine his client's mental capacity by obtaining the examination by Dr. Kentsmith. With the State's psychiatric report indicating the defendant was competent to stand trial, no facts have been alleged to support a claim that defense counsel acted ineffectively by not raising the issue of competency. The defendant makes no claim that the Kentsmith report would support a finding of incompetence.

Further, it is clear that defense counsel's advice to the defendant to enter his plea was based largely on sentencing considerations. The record suggests that there were aggravating circumstances which the State could have presented at sentencing had the defendant proceeded to trial and been convicted. In light of the foregoing facts, it cannot be said that defense counsel failed to conscientiously protect his client's

interests nor that he failed to exhibit ordinary skill or training in the criminal law.

Finally, the defendant has failed to allege facts which would support a claim of prejudice. The defendant has failed to allege facts which would support a claim that the result in this case would have been different if the issue of his competence had been raised by his counsel.

The judgment is affirmed.

AFFIRMED.